Nash, J.
 

 We concur with his Honor in his opinion upon each of those points. From the evidence in the case, the horse was not bailed to Grant, the right of property was in him by virtue of the contract. Although at the time of his death, the whole of the purchase money was not paid, yet from the declarations of Farrier, it is evident he bad abandoned and given up any lien which he might have had on the horse, and that it belonged to Grant. If, however, Grant was but a bailee, it was a bailment coupled with an interest, which passed, upon his death, to his personal representatives. It cannot be necessary to cite authorities to prove that the goods of a deceased person cannot be taken in execution, to satisfy the debts of his representative, while in his hands as such representative. If it were, the case of
 
 McLeod
 
 and
 
 Drummond,
 
 in 17th Yes. &c., and of
 
 Satlcrwhite
 
 and'
 
 Car«
 
 
 *343
 

 son, S
 
 Ired. 549, would be sufficient. In the latter, the Court do not so much decide the question, as recognize it as established law. And indeed it has not been, in the argument here, denied; but, while it is admitted, it is said that the principle is true only as respects rightful executors, and does not extend to executors in their own wrong. In other words, the shield which the law throws around the property of the deceased, while in the hands of him who has taken it into possession, by permission of the law and under its sanction, is withdrawn when in the hands of a freebooter who -has taken 'them, not only without the sanction of the law, but in defiance of its authority. The cases to which our attention has been drawn upon this point, do not sustain the argument. With one exception, they are all cases of rightful administrations. The one in 1 Sal. 295,
 
 Whitehall
 
 v.
 
 Squires,
 
 as reported by him, is in point. The deceased had put a horse into the possession of the defendant to agist, and, after his death, the plaintiff had promised the defendant to bury him, and in part payment of his bill, agreed he should keep the horse. Subsequently, he took out letters of administration upon the estate of the deceased, and brought the action in trover to recover the value of the horse. The majority oí the Court decided the plaintiff could not recover, but Lord Holt differed with them. No reason is given-in
 
 Salkeldfov
 
 the judgment of the majority, but in
 
 Garthem
 
 108, it was held, that the defendant was guilty of a wrongful act in keeping possession of the horse, and had thereby made himself Executor in his own wrong, and that the plaintiff, by assenting to his so doing, was á
 
 particep& criminis,
 
 and was not at liberty, to take the property from him. The opinion of Lord Holt is sustained by the whole Court, in the case of
 
 Mountford agaisnt Gibson,
 
 4 East. 441. But the case before us is essentially different. Here the plaintiff never did assent to the sale or agree the defendant should take possession of the horse. On the contrary, she forbid the sale. She was in no wrong
 
 *344
 
 in that particular. And it is further to be remarked, that the claim of the defendant was for a debt, which the plaintiff, as the rightful administrator, would have been- compelled to pay — being for the burial of the intestate. It was said by Lord Eli.enborough, in the case of
 
 Mountford
 
 v.
 
 Gibson,
 
 that Lord Holt’s opinion was founded upon the fact that the plaintiff had been guilty of but a single act, not done in the character of an Executor ; and therefore lie was not an Executor in his own wrong. The defendant’s counsel urges, that the long continued possession and use of the horse by the plaintiff in this case, constituted her an Executrix in her own wrong, and thereby subjected the property to her debts. Here too the cases, referred to are those of rightful executors or rightful administrators. In that of
 
 Quick and wife
 
 against
 
 Staines,
 
 1 Bos. and Pul. 293 ; the wife of the plaintiff had been the widow of McPherson and his Executrix. She took possession of the goods in question and used them as her own for three months; she then married Quick and delivered over the goods to him: they were executed and sold for his debt, and the action was brought to recover them back. The Court decided the action could not be sustained, because the plaintiff, Mrs. Quick had committed a clear
 
 devastavit
 
 in
 
 delivering the goods
 
 to her second husband, after using them herself three months as her own. In remarking on this ease, our object is to show, it does not apply to the one we are considering, but not for the purpose of sanctioning the doctrine it contains. In the case of
 
 Gashill v. Marshall,
 
 l Mo. and Rob. 132—and also reported in the 5th vol. C. and
 
 R. 31,
 
 24th vol. C. L. Rep. Lord Tenteeden ruled, that an administrator, who had taken possession of goods of the intestate and used them in the house of the intestate for three months, might, as administrator, maintain trespass against the Sheriff for seizing, and, after notice, selling them under an execution for the administrator’s own debt. This case is cited and approved by Lord Denman in delivering the
 
 *345
 
 opinion of the Court in the case of
 
 Fenwick
 
 v.
 
 Laywick,
 
 2 Adol. and Ellis, 42 vol. E. C. L. R. 590. His Lordship observes, “ In that case, it is truc, he (Lord Tenterden) is
 
 reported
 
 to have said, if the plaintiff had been in possession of the goods a
 
 very long
 
 time, it might have been otherwise what length of time will suffice to have that effect is not stated. And it may safely be laid down, that no length of possession and use of the property of a deceased person by his personal representative, and which is not inconsistent with the trust by which he holds it, will subject the property to be sold under execution for the debts of the executor. In the case of
 
 Fenwick
 
 and
 
 Laywick,
 
 just referred to, Lord Denman, in remarking upon the íength of time the goods had been in possession of the defendant, says, ** here the possession has been long, but then it is apossession consistent with the will and necessary to the execution of the trusts reposed.” That, it is true, was not the case of the sale of an intestate’s or testator’s property to pay the debt of his reprentatives ; but he considers the principles as the same. If such be the law as regards a rightful executor or administrator, upon what sound principle can it be said that it is different with an officious and tortious intermeddler ? A rightful executor may sell the personal property of his testator; the legal title is in him, and the
 
 bona fide
 
 purchaser will acquire a good title. And this, notwithstanding a misapplication of the purchase money by the executor in the payment of his own debt. Not so with an executor in his own wrong; he cannot, as against the rightful executor, pass a good title by sale, except in making such payment as a rightful executor might be compelled to make. And yet, it is contended, the same property may be taken by execution to satisfy his individual debts. This cannot be so — it is directly in the teeth of the cases of
 
 Satterwhite
 
 and
 
 Carson, 3
 
 Ired.
 
 549,
 
 and
 
 Whit
 
 and
 
 Ray,
 
 4 Ired. 14. In the former, it was decided that whatever doubts might have rested on the question, as it res».
 

 
 *346
 
 pecte'cl a full executorship, it could never have been supposed that the testator’s goods could be taken for the debt of an administrator
 
 pendente lite
 
 ,* and this because such an administrator has the right only to-take eare of the goods. " But the
 
 law
 
 gives to the executor
 
 de son tort
 
 no such
 
 right.
 
 Is it possible a principle can be sanctioned, whereby the estate of a deceased person is rendered less secure in the hands of an intruder, than in those of him who , is in the rightful possession of it ? It cannot be. It would be offering a premium to fraud and violence, inconsistent with the good order and justice of the country. But the case of
 
 Whit
 
 and
 
 Ray
 
 fully answers the question. In substance, it is the same with the one we are now considering. Upon the death of Pierce Roberts, his wife and children took possession of his personal property. The widow married Oliver, who lived with them and used the property for ten or twelve years as his own. The defendant, a Constable, levied an execution, which he held against Oliver for his individual debt, upon the horse sued for. Administration was then granted to the plaintiff, who brought the action in trover for the conversion. The Court decided, that the possession of the next of kin, though for such a length of time, where there was no personal representative of the deceased, gave them no legal title ; and they acquired no such interest in the horse as was liable to execution for their debts, and that an administration, granted after that lapse of time from the death of the intestate, vested in the administrator the legal title and he could recover. In that case, as in this, the long continued possession of Oliver and his use of the property were urged as a fraud upon his creditors ; but it was held,
 
 that
 
 did not divest the administrator of his legal title or prevent him from recovering. The only difference between that case and the present is, that, in the one we are now considering, the plaintiff is the individual, who was in possession of the horse and for whose
 
 *347
 
 debt it was sold — in the former, the administration had been granted to a third person. That surely can make no difference; it is the right, which appertains to the office of representative of the person who fills it, that supports the action. And this is an answer to the last objection of the defendant. The doctrine of estoppel does not arise in the case — the plaintiff' does not sue in her own right — but in
 
 auter droit.
 
 The case of
 
 Fox
 
 and Fisher, 3 Barn and Aid. 243, has no application to the present. That arose under the bankrupt'act of
 
 21 st James the 1st,
 
 whereby all the property in the possession, order and disposition of the bankrupt, pass into the hands of his assignee. The bankrupt was in the possession of the goods of the deceased at the time of her bankruptcy, and a creditor of the deceased was appointed administrator, and brought the action against the assignee, and judgment was given for the defendant upon the wording of the statute. But for the statute the defendant would have been entitled to recover.
 

 Per Curiam. j udgment affirmed.